R. Michael Segal (SBN: 338841)
Email:  msegal@eagle.law
**EAGLE LAW GROUP, P.C.**
6442 Coldwater Canyon Ave., Suite 209
North Hollywood, CA 91606
Telephone:    (818) 574-3712
Facsimile:    (818) 301-5131

Attorney for NORTH INVESTMENT
LIMITED PARTNERSHIP and AMY ELIAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NORTH INVESTMENT LIMITED
PARTNERSHIP, a Maryland Limited
Partnership, and AMY ELIAS, an individual,

  Plaintiffs,

  v.

TRINAD CAPITAL L.P., a Delaware
Limited Partnership, TRINAD CAPITAL
GP, LLC, a Delaware Limited Liability
Company, ROBERT S. ELLIN, an
individual, PANOPTIC FUND
ADMINISTRATION, LLC, a Delaware
Limited Liability Company, PANOPTIC
FUND ADMINISTRATION INC., a
Delaware Corporation, and BERKOWER
LLC, a New Jersey Limited Liability
Company, and DOES 1 through 10, inclusive

  Defendants.

Docket No.: 2:25−cv−05553 ODW (Ex)

**FIRST AMENDED COMPLAINT FOR:**

1. **VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5**
2. **CONTROL PERSON LIABILITY UNDER SECTION 20(a) OF THE SECURITIES EXCHANGE ACT**
3. **BREACH OF CONTRACT**
4. **BREACH OF FIDUCIARY DUTY**
5. **FRAUD AND DECEIT**
6. **CONVERSION**
7. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
8. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.)**

JURY TRIAL DEMANDED

North Investment Limited Partnership and Amy Elias (collectively referred to as "Plaintiffs"), by and through their attorneys, Eagle Law Group, P.C., for their First Amended Complaint ("FAC") against Trinad Capital L.P., Trinad Capital GP, LLC, Robert S. Ellin, Panoptic Fund Administration, LLC, Panoptic Fund Administration Inc., and Berkower LLC (collectively referred to as "Defendants"), allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## **PRELIMINARY STATEMENT**

1.     Plaintiffs North Investment Limited Partnership ("North") and Amy Elias ("Elias") sue Defendants Trinad Capital L.P. (the "Fund"), its general partner Trinad Capital GP, LLC ("Trinad GP"), their principal Robert S. Ellin ("Ellin"), fund administrators Panoptic Fund Administration, LLC and Panoptic Fund Administration Inc. (collectively referred to as "Panoptic"), and accountant Berkower LLC ("Berkower") for fabricating "Statements of Capital Activity" and Schedules K-1 that falsely reported distributions after Plaintiffs exercised contractual redemption rights, thereby withholding the funds and saddling Plaintiffs with potential tax liabilities on phantom income in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, with Ellin liable as a control person under Section 20(a), 15 U.S.C. § 78t(a); the same conduct supports state-law claims for breach of contract, breach of fiduciary duty, fraud, conversion, violations of California's Unfair Competition Law (Business and Professions Code section 17200 et seq.), and aiding and abetting under California common law and Delaware partnership law.

2.     Plaintiffs seek (i) compensatory damages equal to the full value of the redemption proceeds Defendants continue to withhold — an amount already known to include at least the $151,843.60 falsely attributed to North and the $48,461.08 falsely attributed to Elias and believed, after accounting for principal, profits, and accrued gains, to run well in excess of those amounts — together with consequential damages for future potential tax liabilities, investigative expenses, and other losses proved at trial; (ii) punitive damages to punish and deter Defendants' intentional misconduct; (iii) injunctive and

declaratory relief compelling Defendants to issue accurate financial statements and Schedules K-1, correct any filings with the Internal Revenue Service or other regulators, and immediately remit all sums owed; (iv) the imposition of a constructive trust over any misappropriated funds or assets traceable to Plaintiffs' investments; and (v) an award of attorneys' fees, litigation costs, and pre- and post-judgment interest at the maximum rate permitted by law.

## JURISDICTION

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Maryland, California, Arizona, and New Jersey, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

5.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

6.    Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Trinad Capital L.P., Trinad Capital GP, LLC, Robert S. Ellin, Panoptic Fund Administration, LLC, Panoptic Fund Administration Inc., and Berkower LLC are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

7.    Plaintiff North Investment Limited Partnership is a Maryland limited partnership with its principal place of business located at One South Street, Suite 2440, Baltimore, Maryland 21202. North invested in the Fund as a limited partner.

8.    Plaintiff Amy Elias is an individual residing at 5101 N Casa Blanca Drive, Unit 237, Paradise Valley, Arizona 85253. Elias likewise invested in the Fund as a limited

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

partner.

9. Upon information and belief, Trinad Capital L.P. is a Delaware limited partnership. Its principal place of business is located at 269 South Beverly Drive, Suite 1450, Beverly Hills, California 90212. The Fund solicited Plaintiffs' investments, issued partnership documents, and has defaulted on its obligations to honor Plaintiffs' redemption requests.

10. Upon information and belief, Trinad Capital GP, LLC is a limited liability company formed under the laws of Delaware. Its principal place of business is located at 629 N. Oakhurst Drive, Beverly Hills, California 90210. Trinad GP controls the Fund's operations, distribution of redemption proceeds, and the preparation or oversight of fund statements.

11. Upon information and belief, Robert S. Ellin is an individual who resides at 629 N. Oakhurst Drive, Beverly Hills, California 90210. Upon information and belief, Robert S. Ellin is a citizen of California. Ellin is the principal manager of the Fund and Trinad GP. Ellin makes all major decisions relating to distributions, redemptions, and the issuance of financial statements and tax documents.

12. Upon information and belief, Panoptic Fund Administration, LLC is a limited liability company formed under the laws of Delaware and does business in Los Angeles, California. Panoptic prepared or disseminated certain false Statements of Capital Activity indicating that Plaintiffs had received distributions when in fact they had not.

13. Upon information and belief, Panoptic Fund Administration Inc. is a corporation formed under the laws of Delaware and does business in Los Angeles, California. Panoptic prepared or disseminated certain false Statements of Capital Activity indicating that Plaintiffs had received distributions when in fact they had not.

14. Upon information and belief, Berkower LLC is a limited liability company formed under the laws of New Jersey and does business in Iselin, New Jersey. Berkower prepared and/or transmitted false Schedules K-1 attributing phantom distributions to Plaintiffs. Plaintiffs are informed and believe that Berkower acted knowingly or with

reckless disregard as to the falsity of these documents.

15.    Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned in this FAC, Defendants, and each of them, were the agents, servants, employees, and/or alter egos of each other, and in doing the things alleged in the FAC, were acting within the scope of their authority, as such agents, servants, employees, and/or alter-egos, and with the permission and consent of their co-defendants.

16.    Plaintiffs are informed, believe, and on that basis allege, that at all times relevant herein, Defendants, and each of them, were the agents, servants, employees, and/or alter-egos of each of the other Defendants and their acts and omissions hereinafter mentioned were performed within the scope of their authority as such agents, servants, and employees and/or alter-egos, with the knowledge, permission, consent and/or ratification of the other Defendants.

## STATEMENT OF FACTS

17.    Plaintiffs met Ellin in 2005 through a mutual friend, David Chazen, who recommended Plaintiffs invest in the Fund.

18.    During the course of discussions with Plaintiffs, Ellin represented the Fund would invest in media companies and small capitalization media companies.

19.    North subscribed to purchase limited partnership interests in the Fund on or about January 21, 2005, investing $350,000 pursuant to a fully executed subscription agreement and limited partnership agreement, which was amended numerous times throughout the course of Plaintiffs involvement with Defendants (the most recent of which is attached hereto as Exhibit A and referred to as the "Limited Partnership Agreement").

20.    Elias also subscribed to purchase limited partnership interests in the Fund on or about January 21, 2005, investing $175,000 pursuant to an almost identical subscription agreement (collectively with North's agreement referred to as the "Subscription Agreement" attached hereto as Exhibit B) and Limited Partnership Agreement.

21.    The Fund purported to invest substantially all of its assets directly in shares issued by Trinad Capital Master Fund, Ltd. (the "Master Fund"), a Cayman Islands

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

exempted company. The Master Fund would then invest primarily in smaller public companies and privately held companies which the Master Fund believed had the potential to go public.

22.    Prior to Plaintiffs investing in the Fund and even after their investment, Ellin indicated that Plaintiffs generally could redeem their capital upon providing notice.

23.    After investing in the Fund, Plaintiffs rarely received audited annual financial statements, though Panoptic provided regular capital statements detailing the amount of funds in Plaintiffs' respective accounts.

24.    On or about October 14, 2008, the Fund notified Plaintiffs that it was suspending withdrawals due to a "tumultuous market."

25.    On or about December 11, 2008, North sent the Fund requests for a "complete withdrawal" of their interests in the Fund once the Fund lifted the aforementioned suspension.

26.    On or about June 30, 2009, the Fund sent its investors a letter stating that it would end its withdrawal suspension on September 30, 2009.

27.    The Fund never honored North's redemption requests.

28.    Despite their previous redemption request being ignored, once again, on or about April 12, 2022, at the direction of the Fund, Plaintiffs submitted written redemption requests seeking to withdraw all capital in their respective accounts from the Fund. Plaintiffs each provided complete banking information for wiring the redemption proceeds. Defendants received these requests but have since failed to honor them.

29.    In or around April 2023, Plaintiffs each received a Schedules K-1, prepared or transmitted by Berkower, likewise reporting the same fictitious distribution amounts (hereafter collectively referred to as the "K-1s" and attached hereto as Exhibit C). As a result of the K-1s, Plaintiffs incurred potential tax liabilities for phantom income, as the K-1s indicated withdrawals never actually consummated.

30.    In May 2023, Defendants Panoptic, Trinad GP, and Ellin, on behalf of the Fund, sent undated Statements of Capital Activity to Plaintiffs representing that

FIRST AMENDED COMPLAINT

distributions had been made to Plaintiffs on September 30, 2022. These included an alleged distribution of $151,843.60 to North and $48,461.08 to Elias. **Plaintiffs received no such distributions**.

31. After receiving the K-1s, Elias text messaged Ellin on Saturday, May 27, 2023, on behalf of Plaintiffs in an attempt to rectify the apparent discrepancy (the screenshots of which are attached hereto as Exhibit D). Ellin responded as follows:

> *I don't sent stmt admistrator does*
>
> *He's checking nothing can change now till Tuesday anyway*
>
> *Will confirm shortly*
>
> *Looks correct on amount*
>
> *Feels low since we're up 3 x since dec*

32. Confused by Ellin's response, Elias clarified she had not received a check from Defendants. Ellin replied:

> *That what I'm checking*
>
> *Should been done but looks some made a mistake*
>
> ***My fault If they did*** (emphasis added)

33. Still unclear as to what had transpired with Plaintiffs' withdrawal requests, Elias queried Ellin further, requesting the "real story," to which Ellin replied:

> *Not sure what real story mean*
>
> *either they payed out in stock or in kind to wrong or your owed*
>
> *this amount*

34. Again, Elias had to clarify that Plaintiffs had not requested and "in kind" withdrawal and instead had requested a cash payment, to which Ellin responded:

> *Im sure you correct but shows leaving acct*
>
> *Will figure out and fix apologize*
>
> *Look correct*
>
> *Will have update on distribution Tuesday*

35. Elias, still confused, replied to Ellin wondering if Ellin would check on "what

FIRST AMENDED COMPLAINT

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

happened to the check that was supposedly sent." Ellin texted:

> *Not sure sarcasm but we will have confirm of distribution cash or kind in*
> *Tuesday*
>
> *Shame got out as market hit lowest point*

Elias, frustrated with Ellin's responses replied:

> *It wasn't meant to be sarcastic.*
>
> *It's just frustrating because I know our attorney (Richie and mine) has been*
> *asking for a while and not getting much clarity.*

Ellin responded:

> *My phone works 24 hours a day*
>
> *not sure need attorney threatening*
>
> *instead calling or texting took a minute over holidays to get*
> *resolved*

36. After not hearing from Ellin for 3 days, despite Ellin's assurances, Elias requested an update via text on Tuesday, May 30, 2023. Ellin text messaged Elias back that he would have an update by the end of the day. He did not. So, Elias texted him again the next day to follow up. Ellin responded:

> *Sorry*
>
> *We working in distribution on kind asap*
>
> *Your # is correct*

37. Again, Elias reminded Ellin that she wanted a cash withdrawal, to which Ellin stated:

> *Understood fund not liquid for all redemptions right now*
>
> *This has been a brutal 2 years for media tech micrcaps under*
> *250 mill*
>
> *With almost no liquidity*

38. Exasperated with Ellin's continued errors and excuses, Elias stated she would contact her attorney to resolve the matter. Ellin then changed his position to:

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

*Send wire instruction found a buyer happy to buy out your positions*

39.    Elias then also received an email from Ellin which read:

*Any send wire instructions*

*Wire will go asap*

*Thx*

40.    Three days later, on June 2, 2023, Elias emailed Ellin:

*I asked twice yesterday but no response. I need to know when*
*the wires for both my and North Investments will be sent.*
*Please advise.*

41.    Ellin replied to Elias that day with:

*Do not have answers yet waiting for paperwork from buyer*

*They have not agreed to but north*

42.    This pattern of back and forth continued between Plaintiffs and Ellin for over a week, with Ellin continuously failing to provide any further information on his alleged "buyer" and offering in kind redemptions instead. Plaintiffs never received their requested withdrawals.

43.    Having repeatedly received conflicting and inaccurate information from Ellin, Plaintiffs' counsel sent Defendants Fund, Trinad GP, and Ellin (collectively referred to as the "Trinad Defendants") a letter on August 25, 2023, reiterating their withdrawal request and also requesting: (1) fund administration reports showing the actual disbursement of Plaintiffs' funds; (2) amended Schedules K-l showing no distributions to the Plaintiffs from the Fund during calendar year 2022; and (3) evidence that the amended Schedules K-l had been filed with the United States Internal Revenue Service.

44.    Despite Ellin's written representations that he would be willing to discuss providing as much, he never meaningfully engaged with Plaintiffs to resolve the matter.

45.    Plaintiffs repeatedly demanded that Trinad Defendants remit the redemption proceeds or correct the erroneous tax documentation. Ellin promised to "fix" the issue and admitted responsibility. However, Ellin and the other Defendants refused to pay the

sums reflected in the Statements of Capital Activity and the K-1s or to provide corrected forms to Plaintiffs or the Internal Revenue Service.

46.     In January 2024, Ellin once again contacted Elias via text message, stating:

> *I'm working on getting back in fund*
>
> *. You guys did sign redemptions*
>
> *I'll have a fix for you both shortly*
>
> *....*
>
> *Sorry for confusion*
>
> *We will big again soon*
>
> *Thx*

47.     Elias, once again confounded by Ellin's representations, requested clarification on what Ellin meant by being "big again."  Ellin replied:

> *Win*
>
> *Been the worst 2 years for microcaps in history*

48.     Two days later, after not hearing anything further from Ellin, Elias again requested an update.  Ellin further delayed with his response:

> *By tomm*
>
> *Waiting for legal approval*
>
> *Very close*

49.     Hoping to obtain more information on the nature of Plaintiffs' investment and suspicious of Ellin's representations, Elias requested additional documentation on the Fund's investments.  Ellin then stated:

> *We do not share portfolio*
>
> *But you can easily see size holding*
>
> *Liveone*
>
> *Podcastone*
>
> *2 biggest holdings*

50.     As Ellin had not answered her question, Elias message Ellin wondering how

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

FIRST AMENDED COMPLAINT

Plaintiffs could better understand the nature of their investment in the Fund.    Ellin responded:

> *Large piece is Liveone podcastone*
>
> *We will have another big run shortly*

51.    Between late January and early February 2024, Ellin and Elias continued to message as Elias attempted to unwind her investment in the Fund, with Ellin consistently failing to follow through with any of his promises to resolve the matter of Plaintiffs' investments.

52.    Plaintiffs continued to rely on Ellin's assertions that he had made a mistake and that the Fund would return their investments and rectify the inaccurate K-1s.

53.    In June and August of 2024, Plaintiffs' counsel sent Berkower letters notifying the accounting firm that the K-1s were inaccurate and required revisions to accurately reflect the lack of Fund distributions.    Berkower responded that it could not take such action without the approval of Trinad GP.

54.    Plaintiffs are informed and believe that Panoptic and Berkower knowingly or recklessly participated in the dissemination of these false capital statements and K-1s. Plaintiffs are further informed and believe that none of the Defendants conducted any meaningful verification to ensure that these distributions had actually occurred.

55.    Plaintiffs have been damaged by the deprivation of their rightful investment proceeds, by potentially incurring potential tax obligations on non-existent distributions, and by being forced to expend time and resources correcting or mitigating Defendants' misrepresentations.    Plaintiffs now bring this action to recover their damages and to seek declaratory and injunctive relief.

//
//
//
//
//

-11-

FIRST AMENDED COMPLAINT

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

## CLAIMS

## COUNT I: VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5

### (Against Trinad Capital L.P., Trinad Capital GP, LLC and Robert S. Ellin)

56.    Plaintiffs repeat and reallege paragraphs 1 through 55 hereof, as if fully set forth herein.

57.    Plaintiffs invested in limited partnership interests in the Fund through executed Subscription Agreements and were subject to the Limited Partnership Agreement and Offering Memorandum, which explicitly referenced their rights to capital accounts and redemptions.  These investments constituted securities within the meaning of the Securities Act of 1933 and Securities Exchange Act of 1934.

58.    On or about April 12, 2022, both Plaintiffs submitted written redemption requests seeking the return of all capital in their respective accounts.  Plaintiffs provided accurate wire instructions and complied with all procedural requirements for redemption under the governing agreements.  Trinad Defendants acknowledged receipt of the requests but failed to remit any distributions.

59.    In or around April 2023, Defendants caused the K-1s to be issued falsely reporting that North had received a $151,843.60 distribution and Elias had received a $48,461.08 distribution as of calendar year 2022.  In May 2023, Defendants issued backdated or undated "Statements of Capital Activity" affirming these same fabricated amounts.  Plaintiffs, in fact, received no such distributions, in cash or in kind.

60.    When confronted via text message, Ellin admitted that no distribution had occurred, acknowledged that an error had been made, and took personal responsibility, stating, "My fault if they did."  Ellin alternated between various explanations—including that the Fund was illiquid, that the distributions were "in kind," and that they may have been sent to the wrong party—all while confirming that no actual funds were delivered. These admissions are documented in contemporaneous text messages and confirm that Defendants knowingly made false statements.

61.     Despite multiple requests from Plaintiffs and their counsel, Defendants have refused to correct the false K-1s or provide amended tax documentation to the IRS and have continued to misrepresent the status of redemption payments.

62.     Trinad Defendants' representations regarding the redemption of capital, the status of distributions, and the content of the K-1s and capital statements were materially and intentionally false and misleading.  A reasonable investor would consider the receipt of redemption proceeds and the tax treatment of those proceeds as fundamental to the value and management of their investment.

63.     Trinad Defendants acted with scienter.  Ellin, as the manager of Trinad GP, personally directed the issuance of the false K-1s and capital statements and knowingly failed to correct them despite repeated demands.

64.     These misrepresentations and omissions were made "in connection with" Plaintiffs' purchase, continued holding, and attempted redemption of their interests in the Fund and caused Plaintiffs to rely on false information in preparing their tax returns and deciding to delay legal action based on Ellin's assurances.

65.     Plaintiffs suffered damages as a direct and proximate result of Defendants' conduct, including the loss of investment proceeds, potential tax liabilities on phantom income, interest and penalties incurred with taxing authorities, and the expenditure of attorneys' fees and other costs to address and rectify Trinad Defendants' fraudulent conduct.

66.     By reason of the foregoing, the Fund, Trinad GP, and Ellin are liable to Plaintiffs for violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiffs seek compensatory damages, rescission, disgorgement of ill-gotten gains, attorneys' fees, costs, and pre- and post-judgment interest, and any other relief deemed appropriate by the Court.

//

//

//

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

-13-

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

## COUNT II: CONTROL PERSON LIABILITY UNDER SECTION 20(a) OF THE
## SECURITIES EXCHANGE ACT

### (Against Robert S. Ellin and Trinad Capital GP, LLC)

67.    Plaintiffs repeat and reallege paragraphs 1 through 66 hereof, as if fully set forth herein.

68.    Trinad GP served as the General Partner of the Fund and exercised complete operational control over the Fund, including decision-making authority regarding investor redemptions, financial reporting, and communications with limited partners.

69.    Ellin managed and controlled both Trinad GP and the Fund, directing the Fund's affairs, overseeing Panoptic's fund administration, and approving the issuance of financial and tax documents.

70.    Ellin, the Fund, and Trinad GP committed primary violations of Section 10(b) and Rule 10b-5 by issuing false statements concerning Plaintiffs' investments and distributions.

71.    Ellin and Trinad GP had actual power and influence over the Fund's policies and practices culpably participated in the scheme that gave rise to the primary violations of Section 10(b) of the Exchange Act, making Ellin jointly and severally liable under 15 U.S.C. § 78t(a).

72.    Ellin directly participated in and orchestrated the scheme to defraud Plaintiffs by issuing false redemption documents, allowing dissemination of false K-1s, and providing false assurances to Plaintiffs to delay enforcement of their rights.

73.    Trinad GP, through its exclusive management authority over the Fund as outlined in the Limited Partnership Agreement, was in a position to and did influence the conduct leading to Plaintiffs' damages.

74.    Ellin is the principal manager and controlling individual of the Fund and Trinad GP.  He possessed actual power or control over the Fund's policies and decision making and culpably participated in the scheme that gave rise to the primary violations of Section 10(b) of the Exchange Act, making him jointly and severally liable under

15 U.S.C. § 78t(a).

75.    By reason of the foregoing, Ellin and Trinad GP are liable in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT III: BREACH OF CONTRACT

**(Against Trinad Capital L.P., Trinad Capital GP, LLC, and Robert S. Ellin)**

76.    Plaintiffs repeat and reallege paragraphs 1 through 75 hereof, as if fully set forth herein.

77.    Plaintiffs each executed the Subscription Agreement and the Limited Partnership Agreement with the Fund in or around January 2005.  Pursuant to the terms of these agreements, Plaintiffs made capital contributions to the Fund in exchange for limited partnership interests, and Trinad Defendants agreed, among other things, to manage the Fund's assets prudently and to honor redemption requests made in accordance with the terms of the agreements.

78.    The Subscription Agreement and Limited Partnership Agreement granted Plaintiffs the contractual right to redeem their capital by submitting written notice and banking information.  Plaintiffs fully performed under the agreements by contributing the required capital, adhering to the withdrawal procedures, and providing written redemption requests on numerous occasions, culminating or about April 12, 2022, along with complete wire instructions for the transfer of the redemption proceeds.

79.    Upon receipt of Plaintiffs' redemption requests, the Fund was contractually obligated to remit the requested proceeds within a commercially reasonable period of time. Instead, the Fund, Trinad GP, and Ellin failed to transmit any funds, fabricated Statements of Capital Activity falsely asserting that distributions of $151,843.60 to North and $48,461.08 to Elias had been made and caused false Schedules K-1 to be prepared and transmitted, falsely reporting the same distributions to the Internal Revenue Service.

80.    Defendants' failure to honor Plaintiffs' redemption requests, coupled with the dissemination of false financial documents, constitutes a material breach of both the

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

Limited Partnership Agreement and the Subscription Agreement, including but not limited to Sections 4.1, 4.4(c), 4.4(d), and 5.5 of the Limited Partnership Agreement, and Paragraphs 2, 4, and 5 of the Subscription Agreement.  As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages, including the deprivation of their capital, incurrence of potential tax liabilities on phantom income, and the expenditure of professional fees and other resources.

81.    By reason of the foregoing, the Fund, Trinad GP, and Ellin are liable in an amount to be determined at trial, plus interest, attorneys' fees and costs.  Plaintiffs seek injunctive and declaratory relief compelling Defendants to issue accurate financial statements and Schedules K 1 and correct any filings with the Internal Revenue Service or other regulators.

## COUNT IV: BREACH OF FIDUCIARY DUTY
## (Against Trinad Capital GP, LLC and Robert S. Ellin)

82.    North Investment Limited Partnership and Amy Elias repeat and reallege paragraphs 1 through 81 hereof, as if fully set forth herein.

83.    Trinad GP and Ellin owed fiduciary duties of loyalty and care to the Fund, and to the extent recognized by law, to the limited partners with respect to managing partnership affairs.  Ellin, as the Fund's principal decision maker, also owed fiduciary obligations insofar as he exercised control over Plaintiffs' investments.

84.    Defendants Trinad GP and Ellin breached these duties by withholding funds owed to Plaintiffs, issuing false statements and K-1s, and refusing to correct or disclose the truth.  As a direct and proximate result, Plaintiffs have suffered damages, including loss of their capital, interference with their tax obligations, and other harm.

85.    By reason of the foregoing, Trinad GP and Ellin are liable in an amount to be determined at trial, plus interest, attorneys' fees and costs.

//

//

# COUNT V: FRAUD AND DECEIT

## (Against all Defendants)

86.    North Investment Limited Partnership and Amy Elias repeat and reallege paragraphs 1 through 85 hereof, as if fully set forth herein.

87.    Defendants made materially false representations and omissions to Plaintiffs regarding the status of their investments and redemption proceeds, including (a) that cash distributions had been made to Plaintiffs in 2022; (b) that the amounts reported in the capital statements and the K-1s were accurate; and (c) that redemption payments would be remitted or corrected.  These representations were false at the time they were made and known by Defendants to be false, or made with reckless disregard for their truth or falsity.

88.    Defendants transmitted or caused to be transmitted fabricated Statements of Capital Activity falsely indicating that North had received $151,843.60 and Elias had received $48,461.08 as of September 30, 2022.  Defendants also issued and submitted to Plaintiffs false Schedules K-1 reporting those same amounts as taxable distributions, when no such distributions had occurred.  When confronted, Defendant Ellin admitted the amounts were not actually paid, and instead offered conflicting and inconsistent explanations—including claims of mistaken in-kind distributions, misdirected checks, and a need for legal approval—all of which were knowingly false or intended to mislead.

89.    Defendants intended to induce Plaintiffs to rely on these misrepresentations to delay legal action, avoid public disclosure, and reduce the likelihood of investor withdrawal or reputational harm.  Plaintiffs reasonably and justifiably relied on these misrepresentations, as evidenced by their use of the false K-1s in their 2022 tax filings, their forbearance from immediate litigation, and their repeated attempts to resolve the matter based on Ellin's assurances.

90.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs suffered substantial damages, including potential tax liabilities, professional fees for tax and legal counsel, the loss of redemption proceeds, and other economic harms.

91.    By reason of the foregoing, Defendants are liable for fraud and deceit in an

-17-

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

amount to be determined at trial, plus interest, attorneys' fees and costs. Plaintiffs seek injunctive and declaratory relief compelling Defendants to issue accurate financial statements and Schedules K-1 and correct any filings with the Internal Revenue Service or other regulators, and remit all funds or assets rightfully owed to Plaintiffs.

92.    Defendants' actions were willful, malicious, and fraudulent, justifying an award of punitive damages to deter similar misconduct and punish Defendants' deceit.

## COUNT VI: CONVERSION

### (Against Trinad Capital L.P., Trinad Capital GP, LLC and Robert S. Ellin)

93.    Plaintiffs repeat and reallege paragraphs 1 through 92 hereof, as if fully set forth herein.

94.    Plaintiffs have an immediate and vested right to the redemption proceeds that Defendants refused to remit. By willfully withholding and exercising dominion and control over these funds, the Trinad Defendants deprived Plaintiffs of their rightful property.

95.    Such dominion was wrongful, without consent, and inconsistent with Plaintiffs' ownership interest, thereby effecting a conversion under California law. The conversion has continued for more than two years, depriving Plaintiffs of both principal and the earnings it would have generated.

96.    By reason of the foregoing, Trinad Defendants are liable in an amount to be determined at trial, plus interest, attorneys' fees and costs.

97.    Trinad Defendants' actions were willful, malicious, and fraudulent, justifying an award of punitive damages to deter similar misconduct and punish Defendants' deceit.

## COUNT VII: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (As against Panoptic Fund Administration, LLC, Panoptic Fund Administration Inc., and Berkower LLC)

98.    Plaintiffs repeat and reallege paragraphs 1 through 97 hereof, as if fully set

forth herein.

99. Plaintiffs are informed and believe that Panoptic and Berkower knew or should have known that the Trinad GP, in conjunction with Ellin, owed fiduciary duties to Plaintiffs. Panoptic and Berkower substantially assisted in breaching these duties by issuing or enabling the issuance of fraudulent Statements of Capital Activity and the K-1s, thereby concealing the truth about unpaid distributions.

100. Each had, at minimum, actual notice of the falsity once Plaintiffs' counsel notified them in 2024, yet both refused to correct the documents absent Ellin's direction, thereby demonstrating knowing participation or willful blindness.

101. Their acts of preparing, disseminating, and maintaining the false documents substantially assisted the ongoing breach by concealing the non-payment and frustrating Plaintiffs' efforts to obtain their funds.

102. By reason of the foregoing, Panoptic and Berkower are liable in an amount to be determined at trial, plus interest, attorneys' fees and costs.

## COUNT VIII: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.)
### (Against All Defendants)

103. Plaintiffs repeat and reallege paragraphs 1 through 102 hereof, as if fully set forth herein.

104. Defendants engaged in a pattern of business conduct designed to mislead Plaintiffs and deprive them of their property. After Plaintiffs submitted valid redemption requests and provided updated wire instructions, Defendants failed to return the funds. Instead, Defendants issued fabricated Statements of Capital Activity and false K-1s that represented distributions had been made when no such payments occurred. Defendants knowingly, or at a minimum, with reckless disregard for the truth, made these representations.

105. In addition to misrepresenting the status of Plaintiffs' investment accounts,

Defendants concealed material facts and failed to correct inaccuracies after being placed on notice. Defendants continued to delay payment, failed to offer a credible explanation for withholding the funds, and issued official documents that forced Plaintiffs to report phantom income on their tax returns.  These actions caused economic harm, including unpaid redemption proceeds, adverse tax consequences, and the cost of professional assistance to address the false reporting.

106.   The above-described conduct constitutes unfair and deceptive business practices that are ongoing and likely to recur.  Plaintiffs seek restitution of all amounts wrongfully retained by Defendants, an injunction requiring correction of all false records and prohibiting further misrepresentations, and all other relief permitted under Business and Professions Code section 17203.

## REQUEST FOR RELIEF

**WHEREFORE,** North Investment Limited Partnership and Amy Elias request judgment as follows:

A.    On Count I, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs.

B.    On Count II, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs.

C.    On Count III, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs, and also awarding Plaintiffs injunctive and declaratory relief compelling Defendants to issue accurate financial statements and Schedules K-1 and correct any filings with the Internal Revenue Service or other regulators.

D.    On Count IV, awarding damages in favor of North Investment Limited

EAGLE LAW GROUP, P.C.
6442 Coldwater Canyon, Suite 209
North Hollywood, CA 91606

FIRST AMENDED COMPLAINT

Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs.

E.      On Count V, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs, and also awarding Plaintiffs injunctive and declaratory relief compelling Defendants to issue accurate financial statements and Schedules K-1 and correct any filings with the Internal Revenue Service or other regulators.

F.      On Count VI, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs.

G.      On Count VII, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs.

H.      On Count VIII, awarding damages in favor of North Investment Limited Partnership and Amy Elias, in an amount to be determined at trial but no less than $151,843.60 to North and $48,461.08 to Elias, plus interest, attorneys' fees and costs, and also awarding Plaintiffs injunctive and declaratory relief compelling Defendants to issue accurate financial statements and Schedules K-1 and correct any filings with the Internal Revenue Service or other regulators.

I.      Granting North Investment Limited Partnership and Amy Elias such other and further relief as the Court deems just and proper.

//
//
//
//
//
//

FIRST AMENDED COMPLAINT

Dated July 2, 2025

**EAGLE LAW GROUP, P.C.**

By: _____

R. Michael Segal
Attorney for Plaintiffs
NORTH INVESTMENT LIMITED
PARTNERSHIP and AMY ELIAS

FIRST AMENDED COMPLAINT